## PHELPS *v*. ELLIOTT *et al.*

(*Circuit Court, S. D. New York.* July 10, 1888.

1. VENDOR AND VENDEE — PURCHASE PENDING APPEAL — MERCANTILE SECURITIES — BONDS.
    Where bonds held by a receiver, in a suit to adjudicate the ownership of the fund evidenced by them, are, on dismissal of the complaint, turned over by him, under order of court, to the defendant, who sells the same to a purchaser having knowledge of the fact that an appeal has been taken, but without a *supersedeas*, such purchaser takes subject to the determination of the cause on the appeal, though the bonds are of the nature of mercantile securities.

2. FRAUD—PLEADING.

Plaintiff, as assignee in bankruptcy of one M., brought suit against M. and W. to recover as assets money collected by them on a claim against the United States, alleged to have been fraudulently concealed and transferred to W. for M.'s use. The fund was placed with a receiver, and invested in bonds. The complaint was afterwards dismissed on demurrer, and an appeal taken without a *supersedeas*. By order of the court, the bonds were turned over to M., who sold them to the present defendants, who had knowledge of all the circumstances. On the appeal, the order dismissing the complaint was reversed, without passing on the merits. The complaint in the present action alleges that the title to the fund was adjudged by the appellate court to be in plaintiff, and omitted to charge the grounds of fraud on the part of M. as set up in the original action. *Held*, that the adjudication did not have the effect alleged, and that the complaint is defective for want of sufficient allegations of fraud.

3. LIMITATION OF ACTIONS—RUNNING OF STATUTE.

Where, in a suit to adjudicate a claim to a certain fund, the bill was dismissed on demurrer, and an appeal was taken, but there being no *supersedeas* the bonds evidencing the fund were turned over by the receiver under order of court to the defendant therein, who fraudulently, as alleged, sold the same to the present defendants, a bill to recover the bonds not brought within six years (the limitation prescribed in such cases by local statute) from the time plaintiff first had knowledge of the sale will be dismissed, though six years had not yet elapsed since the reversal on the appeal of the order in the original cause.

4. SAME—PLEADING—PLEA OF LONGER INCLUDES SHORTER STATUTORY BAR.

A suit in equity by an assignee in bankruptcy to recover certain bonds against parties to whom, as alleged, they had been fraudulently transferred by the bankrupt, must, under Rev. St. U. S. § 5057, be brought within two years from the time of the discovery of the alleged fraudulent transfer, and if it is necessary to raise such a defense by plea it is sufficiently raised by a plea of the ordinary bar of six years; that period necessarily including the shorter.

In Equity.

*H. B. Titus*, for complainant.

*William G. Choate* and *John Selden*, for defendants.

WALLACE, J. This cause has been argued for the complainant upon the theory that the bill of complaint sufficiently avers that he, as the assignee in bankruptcy of one McDonald, became entitled to a claim against the United States for cotton destroyed during the war of the Rebellion; that, by fraudulent concealment and misrepresentation of McDonald, the claim was included among the supposed worthless assets of the bankrupt's estate, and sold as such at a public sale, made by order of the bankrupt court, and was bought by one White for the sum of $20 for McDonald himself, and with money furnished by McDonald; that McDonald obtained an award against the United States for the sum of $197,-191 in gold, which award he assigned to White; that in September, 1874, the complainant brought an action in the supreme court of the District of Columbia against White and McDonald to restrain them from receiving the sum to be paid upon the award, and to obtain a decree that the fund arising therefrom be adjudged to belong to him; that by certain interlocutory orders or decrees made in the progress of that cause one Riggs was appointed a receiver, and came into the possession of $107,012, part of said fund, and was directed to invest the same in bonds of the District of Columbia, and to hold the fund thus invested subject

to the rights of the complainant during the pendency of the suit; that Riggs, as receiver, did invest the sum in such bonds; that the supreme court of the District of Columbia decided the cause adversely to the complainant, but on appeal from the decree to the supreme court of the United States the latter court reversed the decree, and adjudged that the title to the said claim and award was vested in the complainant, (99 U. S. 298;) that during the pendency of the suit McDonald, in fraud of the rights of the complainant, obtained possession of the bonds from the receiver, and sold and delivered them to the defendant; and that the defendant, at the time of purchasing the bonds, had full knowledge of the complainant's rights, of the pendency of the suit, and that the sale to them by McDonald was made with intent to defeat the complainant's rights. The prayer of the bill is, in substance, that it be adjudged that the defendants acquired no title to the bonds, and be required to deliver them over to complainant, or account for their value. The defendant is one of the surviving members of the banking firm of Riggs & Co. Riggs, who was a member, died in 1881. Originally Kieckhoefer, another of the surviving members of that firm, was a party defendant; but he demurred to the bill, the demurrer was sustained, and as to him the bill has been dismissed. The suit was commenced as to the present defendant August 20, 1884.

The proofs show that McDonald was adjudged a bankrupt by the district court of the United States for the Southern district of Ohio December 10, 1868; that the complainant was appointed assignee, and received, February 12, 1869, an assignment in due form of all the bankrupt's estate; that McDonald, who was a British subject, had at the time a claim against the United States for cotton destroyed by the army, which he was aware was one of strong equity and in respect to which he entertained a hope of obtaining relief and compensation; that he described it so vaguely in his schedule of assets in the bankruptcy proceeding as to conceal its real character from the complainant; that in September, 1869, the complainant petitioned for and obtained an order from the court in bankruptcy to sell all the uncollected accounts belonging to the estate of the bankrupt at public sale, and on or about September 27th sold them at such sale to one White for the sum of $20; that this purchase was made for McDonald; that McDonald was enabled to and did prosecute his claim against the United States before the joint British and American commission organized under the treaty of May 8, 1871, between the United States and Great Britain, as though he had never been divested of it; that the claim was adjudged to be valid, and the commission awarded him the sum of $197,190, to be paid in gold by the government of the United States; that upon learning of the award the complainant brought a suit in the supreme court of the District of Columbia against McDonald and White to recover the amount, and to restrain them from collecting it; that one Riggs, a member of the banking firm of Riggs & Co., was appointed a receiver in that suit, and as such receiver was directed to invest $107,012, part of the award which came to his hands, in District of Columbia bonds, and to hold the same thus invested sub-

ject to the rights of the parties in the suit; that the receiver did invest in the bonds as directed; that McDonald and White demurred to the bill filed by the complainant, and the court sustained the demurrer, and dismissed the complainant's bill, and by its decree directed that the bonds —"the funds belonging to the cause"—be delivered by the receiver to McDonald and White; that the complainant caused an appeal to be entered in the cause, but did not give security or obtain any order suspending its operation; that McDonald called upon the receiver and demanded the bonds; that the receiver was aware that the appeal had been entered, and being in doubt as to his duty went to the judge who decided the cause for instructions, and was instructed that his functions were at an end, and that it was his duty to deliver the bonds to McDonald; that the receiver delivered the bonds, and thereupon McDonald applied to Riggs & Co. to purchase them; that Riggs & Co. were informed of what had taken place in reference to the decree, the appeal, the instructions by the judge to the receiver, and, after consulting with the receiver, concluded that McDonald could rightfully sell the bonds, and thereupon, June 28, 1875, bought them, paying the full market price at which they were then selling; that the complainant, by his attorney, had full knowledge of the transaction at the time it took place; that subsequently the appeal taken in the cause was heard by the supreme court of the United States, and that court, in May, 1879, ordered by its mandate that the decree of the court below be reversed, and the cause be remanded for further proceedings in the court below "in conformity with the opinion;" that afterwards, the complainant filed a supplemental bill in the cause in the supreme court of the District of Columbia, setting forth the sale of the bonds by the receiver and the payment of the proceeds thereof to McDonald and White, and praying for a money decree against McDonald and White for the sum received by them; that subsequently McDonald was adjudged in contempt for not restoring the fund to the court, and a decree *pro confesso* upon the original and supplemental bill was ordered, and July 8, 1880, a final decree was entered in the cause adjudging that McDonald and White pay the complainant the sum of $58,735.

The proofs sufficiently show that the purchase by McDonald, in the name of White, at the assignee's sale of the claim against the United States, and his subsequent prosecution of the claim to an award, were acts in consummation of an original fraudulent design to conceal the real character of the claim from the complainant, and appropriate the fruits to himself in fraud of the creditors represented by the complainant. The documentary evidence exhibits substantially every fact averred in the bill which was considered by the supreme court of the United States upon the demurrer; and as that court held the facts alleged sufficient to establish *prima facie* the fraudulent character of McDonald's acts, that character must be attributed to them now upon the documentary evidence. The bill, however, contained allegations which are not in the present bill, and which were doubtless considered by the court as sufficiently averring a concealment by McDonald of the true value and

character of his claim against the United States from his assignee in bankruptcy which was constructively if not actually fraudulent. It detailed the particulars of the transaction out of which the claim arose, and set out literally the description of the claim as it was inserted by McDonald in his schedule in the bankruptcy proceedings, and thus, by contrasting the real character with the described character of the claim, enabled the court to see that McDonald had not only omitted to give such a description of it as it was his duty to give to his trustee, but had given one which was misleading. In the present bill there is no averment of any fraudulent suppression of the character or value of the claim by McDonald which led or was intended to lead the complainant as assignee in bankruptcy to believe that the claim was worthless or of little value, or of any fact from which a fraudulent intention to conceal the real character or value of the claim from the assignee on the part of McDonald can be implied. The averment is that the "claim was imperfectly described by said bankrupt in his schedule of assets and designated as worthless," without more. There is no averment of a fraudulent purchase of the claim by him, or that the title to the claim did not pass by the sale made by the assignee; nor is there any averment which by any implication is inconsistent with the theory that McDonald purchased the claim, through the instrumentality of White, at the sale of the assets, believing it to be one of little or no value, or which suggests any bad faith in the transaction upon his part. There is no averment that the complainant was misled or deceived by the acts of McDonald. There is nothing in the bill which amounts to a direct assertion that the complainant ever had any equitable title to the award except the allegations respecting the adjudication of the supreme court of the United States. The averment in the bill that the supreme court of the United States "adjudged that the title to the said claim and award became vested in the plaintiff as assignee in bankruptcy" is not established. What was adjudged by that court on appeal from the decree of the court below is found in the mandate of that court. The mandate remanding the cause for further proceedings in the court below in conformity with the opinion is in the usual form of the adjudications of that court upon the reversal of a judgment. The opinion contains no directions to the court below to enter an absolute or final decree for the complainant. It instructs the court below that the facts alleged in the bill, and admitted by the demurrer, were sufficient to entitle the complainant to the relief sought by his bill. Not only is there nothing in it, directly or by implication, to preclude the court below from allowing the defendants to answer the bill in conformity with the practice prescribed by the thirty-fourth equity rule, but it distinctly states that the facts of the case as presented by the demurrer "may come again before the lower court, and perhaps before this court, upon the answers of the appellees and the testimony adduced by the parties," and that it is the purpose of the court to leave both courts free to decide the case upon the merits "unfettered by anything contained in this opinion." The court merely adjudged that the demurrer of the defendants was bad in law. Its judgment was in no

sense an adjudication upon the merits that the complainant ever was the equitable owner of the award.

If, when Riggs & Co. purchased the bonds in suit, the complainant was the equitable owner of the award, and as such had an equitable title to the bonds which were in the hands of the receiver, and represented the fund in litigation between the complainant and McDonald and White, it is plain that their purchase could not divest his title. There is no evidence that either member of the firm had any notice of the supposed equities of the complainant beyond the fact that he had brought the suit which had been decided against him, and except as they are affected by the consequences of this information they acted in entire good faith in purchasing the bonds. But they had sufficient notice to put them upon inquiry as to his rights; and, consequently, knowledge is to be imputed to them of all the facts to which such inquiry might have led. They doubtless believed that the decree of the supreme court of the District of Columbia established the invalidity of the complainant's claim to the fund, but they were not justified in reposing upon that belief, especially when they knew that an appeal had been taken from the decree. No decree that is not final between the parties is a protection to one purchasing with notice of the pendency of the suit, unless perhaps in cases where a sufficient interval has elapsed since its rendition to justify the belief that the successful party has abandoned his claim, or does not mean to press it further. The general principle that a purchaser under a decree is unaffected by error in the decree, and has a right to presume that the court has properly investigated and adjudged the rights of the parties, is well settled; and although the judgment or decree may be reversed, yet all the rights acquired at a judicial sale, while it was in full force, and which it authorized, will be protected. *Voorhees* v. *Bank*, 10 Pet. 449; *Grignon's Lessee* v. *Astor*, 2 How. 319; *Gray* v. *Brignardello*, 1 Wall. 634; *McGoon* v. *Scales*, 9 Wall. 23; *Davis* v. *Gaines*, 104 U. S. 386. But this principle only applies to sales made under and by the decree. *Ludlow* v. *Kidd*, 3 Ohio, 550. Except as to such purchasers the rule is that all persons who rely on appealable decisions must take the risk of the ultimate decision. *Thomas* v. *Town of Lansing*, 14 Fed. Rep. 627; *Debell* v. *Foxworthy*, 9 B. Mon. 228; *Watson* v. *Wilson*, 2 Dana, 406; *Norton* v. *Birge*, 35 Conn. 261; *Gilman* v. *Hamilton*, 16 Ill. 225. Nor could Riggs & Co. acquire any title by their purchase as against the equities of the complainant by reason of the circumstance that their purchase was of securities having the character of commercial paper. Their liability does not rest merely upon the doctrine of *lis pendens*. That doctrine is one branch of the law of constructive notice, and is founded upon the theory that it is necessary to the administration of justice that the purchaser of a title during the prosecution of a suit to enforce an adverse title be charged with notice, although he has no actual notice of its pendency. *Murray* v. *Ballou*, 1 Johns. Ch. 566; *Murray* v. *Finster*, 2 Johns. Ch. 155; *Heatley* v. *Finster*, Id. 158; *Bellamy* v. *Sabine*, 1 De Gex & J. 566. If Riggs & Co. had been merely purchasers *pendente lite* they could invoke the authorities which hold that

the doctrine of *lis pendens* cannot be extended to a purchase of commercial paper not due. *County of Warren* v. *Marcy*, 97 U. S. 96. But as they had actual notice of facts which impeached the validity of their purchase, their rights as purchasers of commercial paper before maturity would be subordinate to the complainant's equities. *Scotland Co.* v. *Hill*, 112 U. S. 185, 5 Sup. Ct. Rep. 93; *Jeffres* v. *Cochrane*, 48 N. Y. 671. More imperative notice could not be established than is shown by their knowledge of the pending suit to recover the fund represented by the bonds. Nor can Riggs & Co. justify their purchase of the bonds upon the theory that the receiver who delivered them to McDonald pursuant to the decree directing him to do so was justified in that act. It was the duty of the receiver to obey the decree of the court and deliver over the bonds to McDonald and White, notwithstanding he was aware that an appeal had been taken from the decree. This was determined in *Hovey* v. *McDonald*, 109 U. S. 150, 3 Sup. Ct. Rep. 136, where it was held that, under the rules and practice of the supreme court of the District of Columbia, the force of the decree was not affected by the appeal, no *supersedeas* or order suspending its effect having been obtained, and that it was the duty of the receiver to deliver over the fund. This decision, however, does not countenance the position that Riggs & Co., or the receiver himself, could rightfully acquire a title to the bonds as against the complainant by a purchase from the person to whom they had been delivered.

Although the facts proved establish the complainant's equitable title to the bonds at the time when they were purchased by Riggs & Co., it is doubtful whether under his bill of complaint he can avail himself of these facts. The bill proceeds upon the theory that his title inures by the adjudication of the supreme court of the United States that the title to the award was vested in him. As has been stated, that court did not make any such adjudication, and it follows, now that the averment of the bill is shown to be untrue, that the case must be treated as though that averment was not in the bill. There is no other averment of title, and no facts are set forth from which an equitable title can be deduced. The rule is fundamental in equity pleading that every fact essential to the complainant's title to maintain the bill and obtain the relief must be stated in the bill, otherwise the defect will be fatal. In the language of the court, in *Harrison* v. *Nixon*, 9 Pet. 483, 503, "every bill must contain in itself sufficient matter of fact, *per se*, to maintain the case of the plaintiff. The proofs must be according to the allegations of the parties; and if the proofs go to matters not within the allegations, the court cannot judicially act upon them as a ground for decision, for the pleadings do not put them in contestation." The *allegatta* and the *probata* must reciprocally meet and conform to each other. A party can no more succeed upon a case proved but not alleged than upon a case alleged but not proved. *Foster* v. *Goddard*, 1 Black, 518; *Boone* v. *Chiles*, 10 Pet. 177. A decree must be sustained by the allegations of the parties as well as the proofs in the cause, and cannot be founded on a fact not put in issue in the pleadings. *Carneal* v. *Banks*, 10 Wheat. 181.

If this difficulty in the way of the complainant's case can be met,

there are others which are insuperable. The defendant relies upon the statute of limitations, and has set up this defense in his answer. By the statutes of this state, actions like the present are barred if not brought within a period of six years after the cause of action matures, but the cause of action is not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud. The complainant's cause of action accrued in June, 1875. He was cognizant at that time of all the facts respecting the purchase of the bonds by Riggs & Co. The knowledge acquired at the time by his attorney is to be imputed to him. He did not bring this suit until June, 1884. Although local statutes limiting the time for the commencement of suits cannot *ex proprio vigore* control the decisions of the federal courts when exercising equitable jurisdiction, they furnish a guide and rule by which these courts may determine whether a party has exercised proper diligence in prosecuting his cause of action. Courts of equity apply such statutes by analogy, and adopt the time prescribed by them as a fit and just period for a bar in equity of analogous claims. In *Burke* v. *Smith*, 16 Wall. 393, 401, where the state statute barred actions for fraud after six years, the court said:

"We think a court of equity will not be moved to set aside a fraudulent transaction at the suit of one who has been quiescent during the period longer than that fixed by the statute of limitations after he has knowledge of the fraud, or after he is put upon inquiry with the means of knowledge accessible to him."

It is true the complainant was not in a position to assert his cause of action successfully against the defendant until May, 1879, when the decree of the supreme court of the District of Columbia was reversed; but his misfortune ought not to deprive the defendant of the right to insist that the validity of his purchase, if assailed, be assailed within the time ordinarily prescribed for bringing such transactions in question by statutes of limitation and prescribed by the statute of the state in which he is sued. Especially is this so in view of the fact that in 1881 the firm of Riggs & Co. was dissolved by the death of Riggs, and before the suit was brought the assets were fully collected and distributed among the co-partners and their representatives.

By the bankrupt act (Rev. St. U. S. § 5057) it was the duty of the complainant to bring his action within two years after his cause of action accrued. It was held in *Bailey* v. *Glover*, 21 Wall. 342, that the bar created by this statute does not begin to run in cases of fraud until the discovery of the fraud. To quote the language of the court in that case:

"Congress has said to the assignee, You shall commence no suit two years after the cause of action has accrued to you, nor shall you be harassed by suit when the cause of action has accrued more than two years against you. Within that time the estate ought to be nearly settled up and your functions discharged, and we close the door to all litigations not commenced before it has elapsed."

The complainant has delayed more than five years after he was in a position successfully to assert his claim against the defendant before at-

tempting to do so, and in the mean time one of the members of the firm of Riggs & Co. has died. This statute is by its terms obligatory upon courts of equity. Its language is: "No suit at law or in equity shall be maintainable in any court * * * unless brought within two years," etc. It is not altogether clear that a court of equity, when the proofs show that the action has not been brought within the time prescribed by a statute which is addressed to the court, ought not to dismiss the bill, although the defense has not been taken in the pleadings. In *Bailey* v. *Glover*, the defense was raised by demurrer, and the court treated the question as properly raised in that way. The defendant has not set up in terms the two-year limitation by plea or answer, but his answer alleges that the complainant had full knowledge of the purchase of the bonds by Riggs & Co. at the time they were purchased, and that the cause of action did not accrue within six years prior to the commencement of the suit. Upon the authority of *Bogardus* v. *Church*, 4 Paige, 178, and *Van Hook* v. *Whitlock*, 7 Paige, 373, the answer is sufficient to enable the defendant to avail himself of the statute. In the latter case Chancellor WALWORTH said:

"The allegation in the answer that the complainant's right of action, if **any,** had not accrued within six years, necessarily covered the shorter period **of** three years limited by this clause of the 6th section of the statute."

So, here, the allegation that the cause of action did not accrue within six years necessarily includes the statement that it did not accrue within two years. As the pleadings put in contestation every fact necessary to enable the court to decide whether the action was brought within the proper time, there seems to be no reason why the defense should not be considered. That the statute applies to a case like the present was decided by this court when this cause was here on the demurrer of Kieckhoefer, (29 Fed. Rep. 53,) and is plain upon the authorities. The bill is dismissed.