### UNITED STATES v. MARTINDALE.

(District Court, D. Kansas. First Division. January 18, 1904.)

BANKS AND BANKING—PROSECUTION FOR MISAPPLICATION OF FUNDS OF NATIONAL BANK—VARIANCE.

An indictment under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], against an officer or director of a national bank for willful misapplication of its funds, in order to advise the defendant of the issues to be met, must set forth all of the facts necessary to show how the misapplication was made, and that it was an unlawful one. Under such an indictment charging that the misapplication was made by the drawing of checks on the bank, and obtaining their payment when he had in fact no money on deposit, where it appeared on the trial that defendant had an apparent credit on the books of the bank sufficient to cover the checks, the government cannot impeach such apparent credit by showing that a deposit previously entered on the books to the credit of defendant's account was false and fictitious, and the entry thereof fraudulently procured by defendant; no such transaction being charged in the indictment.

John S. Dean, U. S. Atty.

C. B. Graves, L. B. Kellogg, and Frank Hagerman, for defendant.

PHILIPS, District Judge. The question submitted for decision is as follows: The defendant stands indicted under section 5209 of the

Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3497], so much of which as is pertinent to the case in hand reads as follows:

"Every president, director, cashier, etc., of any association who embezzles, abstracts or willfully misapplies any moneys, funds or credits of the association * * * shall be deemed guilty of a misdemeanor," etc.

The indictment, in substantive effect, charges that the defendant, being a director and vice president of the First National Bank of Emporia, in the state of Kansas, on the 13th day of September, 1898, unlawfully, knowingly, willfully, and fraudulently, with the intent to injure and defraud said banking association, without the knowledge and consent of the board of directors and committees thereof, abstracted certain of the moneys, funds, and credits of said bank for his use and benefit, and for the use, benefit, and advantage of the person and persons unknown to the grand jurors, of the sum and value of $15, the property of said bank, by the manner and means of the said defendant then and there paying and causing to be paid to certain persons to the grand jurors unknown a check for said sum of money, drawn by the defendant out of the moneys, funds, and credits belonging to said bank, said check authorizing and directing said bank to pay to the order of Charles Cross said sum; that the same was then and there willfully, wrongfully, and unlawfully appropriated and converted to the use and benefit of the defendant, and was thereby wholly lost to the said bank; that when said check was paid and caused to be paid the defendant then and there had no moneys, funds, and credits on deposit to his credit with said bank; that his account as a depositor with the bank was then overdrawn many hundreds of dollars; that there was then and there no money owing to the defendant from said bank; that the repayment thereof was not in any way secured, and the defendant had no right to draw any moneys from said bank, or to convert the same to his or any other person's use and benefit; that this was done with the intent to injure and defraud said bank—concluding with the charge that the defendant, as such director and vice president, thereby abstracted said sum of $15 from said bank. The indictment contains 18 similar counts, for similar sums, drawn subsequently at different times, as late as the 16th day of November, 1898, aggregating about $5,078.

Under this indictment the government, after making proof of the giving of said checks to various parties by the defendant and the payment thereof by the bank, about which no controversy is made, seeks to show that while by the books of the bank there appears to have been a deposit entered to the credit of the defendant on the 1st day of August, 1898, on a deposit slip in words and figures following, to wit, "First National Bank, Emporia, Kansas. Deposit for account of W. Martindale 8–1–98, $6,000.00," the amount of which credit more than covered the aggregate of said checks so drawn and paid, said credit was fraudulently procured by the defendant without any consideration moving from him to the bank, and without the knowledge and consent of the board of directors or the discount committee of the bank, and that the same in legal effect was fictitious. This offer of proof by the government is objected to by the defendant for the reason that the

indictment, in describing the method and means of misapplying the moneys and funds of the bank, gives the defendant no notice that the integrity of said credit on the books of the bank is to be inquired into and assailed, and because the indictment alleges there was nothing to the defendant's credit in the bank. If this evidence is excluded by the court, the District Attorney conceded that the prosecution must fail under this indictment.

In the leading case of United States v. Cruikshank et al., 92 U. S. 544, 23 L. Ed. 588, it is held that where the statute itself does not employ terms describing the offense with a well known and established meaning at common law, it is not a sufficient compliance with the sixth amendment to the federal Constitution, which demands that in criminal cases prosecuted under the laws of the United States the accused has the constitutional right to be informed of the nature and cause of the accusation, to simply employ the generic terms of the statute. Every ingredient of which the offense is composed must be accurately and clearly alleged. "The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause. * * * For this facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent, and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances." Bishop, in his work entitled New Criminal Procedure (volume 1), epitomizes the rule of pleading in indictments as follows:

"The facts in allegation must be the primary and individualizing ones, and therefore the pleader must set out the primary facts, disconnected from the law. (Sec. 331) All the facts which constitute the crime should be given. (Sec. 509) The protection of the innocent is the highest duty of the government, and an innocent man, as every defendant is presumed to be until convicted, can know nothing of what is to be brought against him beyond what is set down in the indictment. Hence, the precise and full allegation, which one conscious of crime would not need, is essential to him who would make a just defense against a false charge; and such, in the eye of the law, is every indicted person previous to conviction. (Sec. 517) The indictment must be in distinct and full terms, so plain as to preclude the necessity of guessing at the meaning. (Sec. 518) Every fact which is essential in the prima facie case of guilt must be stated; otherwise there will be at least one thing which the accused person is entitled to know whereof he is not informed. And that he may be certain what a thing is, it must be charged expressly, and nothing left to intendment. All that is to be proved must be alleged. (Sec. 519)."

Accordingly, it has been uniformly ruled that an indictment predicated of section 5209, Rev. St., under the banking law, for the misapplication or abstraction of the funds of a bank, as these terms have no such technical meaning, like the word "embezzle" as used at common law and in statutes, or the words "steal, take, and carry away," must "specify the particulars of the application, so as to distinguish that charge in the indictment as willful and criminal from those others contemplated by the statute which are unlawful but not criminal." And it is held "to be of the essence of the criminality of the misapplication

that there should be a conversion of the funds to the use of the defendant, or of some person other than the association, with intent to injure and defraud the association, or some other body corporate or natural person." Therefore an indictment founded on these offenses must show "how the misapplication was made, and that it was an unlawful one. Without such averments there is no sufficient description of the exact offense with which the defendant is charged, so as to enable him to defend himself against it, or to plead an acquittal or conviction in bar of a future prosecution for the same cause." United States v. Britton, 107 U. S. 655, 669, 2 Sup. Ct. 512, 27 L. Ed. 520; United States v. Northway, 120 U. S. 327, 332, 7 Sup. Ct. 580, 30 L. Ed. 664; Batchelor v. United States, 156 U. S. 426, 15 Sup. Ct. 446, 39 L. Ed. 478.

The contention on the part of the government is that in no form of pleading, including an indictment, is the pleader required to set out his evidence; and in support of the allegation that when the defendant drew checks in question he had no moneys or credits to his account with the bank, when he offers evidence falsifying the $6,000 entry of credit on the books of the bank, of date August 1, 1898, showing that it was in point of fact wholly fictitious and without consideration, such proof is within the allegations of the bill, as it tends, as matter of evidence, to support the general allegation of a willful and false misapplication of the funds of the bank, by drawing checks thereon when in fact he had no money or credits to his account therein. The principal reliance in support of this broad proposition is the language employed by Judge Jackson in United States v. Harper (C. C.) 33 Fed. 484, as follows:

"Loans made and credits given in bad faith, for the purpose of defrauding the bank or to enable him to convert the same to his own use and benefit, or for the use and benefit of another, would be an unlawful and criminal exercise of authority. The form of a loan or giving of credit upon the books of the bank may be adopted as a cover and pretense to conceal a fraudulent transaction; and when resorted to for that purpose, and the moneys of said association are withdrawn by such means, and converted to the officer's own use, whereby injury results to the bank, he is guilty of a criminal act. A false and fictitious credit given to himself or to others acting for his benefit is no credit in the sense of the law. It neither confers rights in favor of the party to whom it is given, nor imposes obligations on the bank. The form which such a transaction may take, the methods adopted to reach the fraudulent ends, or the instrumentalities employed—whether consisting of one act or a succession of acts—to accomplish the fraudulent purpose, in no way changes or alters the character of the act. The law looks through forms, devices, and contrivances to results. No system of bookkeeping, however adroitly or cunningly devised, can give validity to a fraud. If, therefore, fictitious or fraudulent credits were given upon the books of the bank, either to the defendant or to other persons acting for him, neither he nor they acquired thereby any right to the funds of the bank represented by such credits. A credit upon the books of the bank, to be valid and create the relations of creditor and debtor between the parties having such credits and the bank, must represent value received by the bank in the shape of actual cash, or what is honestly deemed its equivalent. It must represent bona fide indebtedness of the bank. Such a credit obtained by an unauthorized charge or credit ticket, without consideration passing to the bank, is no credit in the eye of the law; and when the funds of the bank are drawn out under such a credit, they are wrongfully obtained."

It is to be kept in mind, however, that the learned judge was not discussing the question of pleading in an indictment, but rather the effect of such evidence. He was speaking in respect of an indictment predicated of the direct charge of a false entry made in the books of the bank. The only information given us by the report of the case is that, "the counts relating to false entries charge intent to defraud the bank or deceive its officers." It must be assumed that the indictment set out, in conformity to the requirements of established rules heretofore discussed, a description of the false entries, how and when made, with the essential precision, coupled with the specific charge that it was done with intent to defraud and injure the bank. No conviction could be had on such false entries without such descriptive allegations in the indictment, directly predicated of such distinct offense, under section 5209 of the banking statute. Whereas, in the case at bar it is sought to enter into proof of such entry, to show that it was false, fraudulent, and fictitious, without any allegation whatever of its character, when or how done, or with what intent, or on what consideration, when concededly without falsifying said entry no conviction can be had under the pending indictment.

Even in civil actions it is well settled that fraud respecting the identical act to be avoided must be pleaded before it becomes an issuable fact. It cannot be pleaded in general terms, but the essential constitutive facts must be specified. "Fraud is never presumed, and in order to entitle a party to relief either at law or in equity on that ground it is essential that the fraud be distinctly alleged in the pleadings, so that it may be put in issue, and evidence thereof given. * * * In the absence of such an allegation, evidence of fraud will not be received at the trial." 9 Enc. of Pl. & Prac. 684, 685. "The reason of this rule is that fraud is a conclusion of law from the facts stated, and it is a well-settled rule of pleading that facts, and not legal conclusions, are to be pleaded. Mere general averments of fraud or the fraudulent conduct of a party, without the facts, do not constitute a statement upon which the court can pronounce judgment." Id. 686, 687. "Every material fact to which the plaintiff means to offer evidence ought to be distinctly stated in the premises. If fraud is charged, it must be distinctly and clearly set out." Story, Eq. Pl. par. 28, 251; Noonan v. Braley, 2 Black (U. S.) 499, 17 L. Ed. 278; Knox v. Smith, 4 How. (U. S.) 298, 311, 11 L. Ed. 983; Brooks v. O'Hara (C. C.) 8 Fed. 529, 532; Hazard v. Griswold (C. C.) 21 Fed. 178, 179. So in Phelps v. Elliott (C. C.) 35 Fed. 455, 461, it is said:

"The proofs must be according to the allegations of the parties, and if the proofs go to matters not within the allegations, the court cannot judicially act upon them as a ground for decision, for the pleadings do not put them in contestation. * * * A party can no more succeed upon a case proved but not alleged than upon a case alleged but not proved."

If this were a proceeding in equity to compel restitution of the money covered by the checks in question, on the ground that the defendant at the time had no credit in the bank entitling him to draw on

the bank, when the books of the bank as a matter of fact showed that at the time .the checks were drawn there was an apparent credit,· of anterior specific date, the entry of a sum to the defendant's credit sufficient in amount to cover such checks, if it were the purpose of the complainant to attack such entry as fraudulent, false, and fictitious, by all the established rules of pleading he would be required, by direct averments in the bill, to falsify the entry in order to open up the account for rectification before any such proof could be admitted. 1 Enc. Pl. & Prac. 107; Bispham's Prin. of Eq. (5th Ed.) § 486. Indeed, there is authority from which the conclusion might be drawn that where such credit entry is given on the books of a bank, and the depositor receives from the bank the usual· checkbook, in which said deposit was entered by the receiving teller of the bank (a custom so universal as to well warrant the court in concluding it was observed in this instance) on which the customer is drawing, the checkbook being posted, the transaction partakes of the nature of an account stated, the effect of which can only be avoided in equity by a bill· surcharging or falsifying it. Leather Mfrs. Nat. Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657; 29 L. Ed. 811; McKeen v. Bank, 74 Mo. App. 281, 286; 1 Morse on Banks and Banking (4th Ed.) § 291.

The case of Hoyt v. State, 50 Ga. 313, 315, is an apt illustration of the application of these protective principles of pleading to a criminal indictment. The defendant was charged with receiving specific sums in specific months from a railroad company for the purpose of paying for railroad ties, which sums he converted and embezzled. The evidence was that he reported to the company proper disbursements of the amounts thus received, but as a matter of fact in some instances he did pay to persons from whom he reported purchases less than the sums reported, and in some instances reported, purchases from fictitious persons. The court said that:

"Under an indictment making a general charge of fraudulent conversion, as stated, we do not think it competent for the prosecution to prove that the accused had reported to the bailor special payments as having been made to particular persons, in the performance of his duty as bailee, and that such payments were not, in fact, made to the amounts so reported; or, that there were no such persons as those to whom the payments were reported to have been made. Each of such fraudulent acts would be a crime, and proof thereof would be sufficient to sustain a conviction, and the defendant should be put upon notice of such charge. * * * If the state be aware of such acts, so as to be prepared to prove them on the trial, it would have the same knowledge and the same testimony so as to frame the indictment, that it may contain whatever is necessary to put the counsel on notice of that with which he is charged and of which he is to be convicted. Even in civil cases such a rule of pleading obtains. No trustee who has made his returns is liable to have them· attacked, unless the notice is given in the proceedings against him. If he has omitted to make a proper charge against himself, a specific allegation must be made thereof, by way of surcharging, so as to hold him liable. If he has given himself a credit which is false, or to which he is not in law entitled, the proceedings against him must allege it by a charge falsifying it. If this be the liberal rule in a civil case, there should be as equally a benign one in a criminal procedure. *. * * The testimony offered and objected to was that the defendant's books showed payments to certain persons in 1870, and that there were no such persons. There were three of this

class that were claimed to be proven not to exist. If it were a fact, in each case it was a crime proved, upon which a conviction could be founded. There were then three distinct offenses, each one independent of the other, each sufficient upon which to rest indictment and conviction, and yet of neither was there any charge or notice until the testimony was offered. The same may be said of the testimony as to larger credits being given by the defendant to himself than the amounts actually paid. That was sufficient to show fraudulent conversion in each case, and to support indictments charging them and convictions thereon. It might not be going too far to say that it is a good if not the true rule that where a specific act is an offense under the Penal Code, and that act is to be made by proof, the ground on which a conviction is to be had constituting the crime to be punished, that specific act should be charged in the indictment. It is not necessary that the indictment should allege or show the testimony which is to be used on the trial, but it should set forth sufficiently the act committed by the accused which constitutes the offense charged, and for which act the conviction is sought."

So in Commonwealth v. Shepard, 1 Allen (Mass.) 578, 583, the court, speaking of the charge of embezzlement against the treasurer of a bank, where the evidence might perhaps produce some result of incriminating evidence of the transaction in a different form, said:

"The government was bound to prove the exact offense as it was charged in that count. Doubtless there was proof that the defendant had been guilty of making false entries in his books, and perhaps evidence which tended to show previous acts of embezzlement, but he was not convicted on any count in the indictment which charged such offenses."

Turning to the indictment at bar, it is manifest from the condition in which the question to be decided arises that the real controversy in this case is as to the validity of the transaction of August 1, 1898, by which the $6,000 credit was obtained. It is the initial and central fact, which draws to it the decision of this case. That transaction, under the proof offered in this case, would show a false entry, within the meaning of said section 5209, and would constitute a distinct offense under the statute. Coffin v. United States, 162 U. S. 683, 684, 16 Sup. Ct. 943, 40 L. Ed. 1109; Agnew v. United States, 165 U. S. 52, 17 Sup. Ct. 235, 41 L. Ed. 624. When this indictment was drawn the statute of limitations had run against the offense of such false entry.

It may be conceded, however, that the giving of the checks and drawing thereon the money from the bank, was the culminating act of the offense of misapplication. But the fact of such entry having been made on the 1st of August, 1898, occasions no dispute, and the giving of the checks by the defendant on the bank occasions no dispute; but the real question which the government seeks to have litigated in this indictment is as to whether or not the entry of August 1, 1898, was false and fictitious. Ostensibly the defendant had a credit of $6,000 on the books of the bank, entitling him to draw the checks in question. Therefore, as a part of the case to be made out by it, before it can go to the jury, the government admits that it must go back to the creation of this credit account on the books of the bank (as the books themselves, which the government must put in evidence, show this credit). assail and demolish it. It must show that by some effective fraud, such as deceit or false representation or

conspiracy, the defendant brought about this entry. It must show that the transaction was wholly fictitious, without consideration, procured without the knowledge and consent of the governing board of directors or the discount committee, designed and intended to defraud the bank of its moneys and funds, and that in furtherance of this scheme the checks were issued and the money withdrawn from the bank. The transaction of August 1, 1898, is therefore the initial point, a part of the means—the method—by which the defendant abstracted the money of the bank. If the government is to rely upon this proof, as it must, to make out a case, what right had the pleader to omit any reference thereto in the indictment? Under its contention, the scheme to defraud was necessarily composed of two parts—first, the fraudulent wrongful obtaining of the credit shown by the bankbooks; and second, the withdrawing therefrom the money based on this credit, as any bank teller of the bank, on presentation of checks drawn by the defendant, would treat such credit account as prima facie correct. It seems to me that the fraudulent scheme—the method—by which the false entry was made and the money abstracted constitute an indivisible unit, and cannot be halved, nor in less degree subdivided.

There is nothing on the face of the indictment to indicate to the defendant that this initial substantive transaction of August 1, 1898, was to be inquired into and its integrity determined by the jury, on the trial of this case. It is true that in determining the question of the honest or evil motive—the intent—of the defendant when he gave the checks in question a wide latitude of inquiry may be indulged. Within reasonable limits, the government might be indulged to go into many of the antecedent acts and dealings of the defendant with the funds of the bank, and his methods of obtaining credit and moneys therefrom. This, however, would come under the head of the quo animo as to the particular instance on trial. But this rule does not trench upon the inflexible requirement in criminal indictments, that in describing the methods by which the defendant, as a director, misapplied or abstracted the funds of the bank, the indictment should, with reasonable certainty, specify every material requirement of the fraudulent scheme characterizing the particular transaction to be tried, and under the rules heretofore stated the government should be limited to the acts specified in the indictment.

It may be conceded that the indictment on its face is good in charging a misapplication or abstraction of the funds of the bank, in that, in substance, it charges that the defendant, with intent to defraud the bank of its moneys, gave the checks, and thereby enabled the drawee to obtain the money of the bank, knowing that the defendant had overdrawn his account, and had no credit to him in the bank, with no purpose to replace the fund. But the question presented for decision is, can the defendant be held, in the preparation of his defense, to anticipate that under the mere charge of giving the checks and drawing out the money of the bank, when he had overdrawn his account, and had nothing to his credit in the bank, he should come to trial prepared to show that the credit of $6,000 of

August 1, 1898, placed to his account on the books of the bank long anterior to the giving of the checks, was genuine and honest? If so, where would be the limit to such inquiry? There might be several anterior entries of credits to the defendant's account with the bank, the last of which might be genuine and some of the others fraudulent and false. How many of them or which particular entry may the government assail, without premonition to the defendant, in attempting to make out the case presented under the indictment?

This court is advised from 18 counts in the first indictment against this defendant, the sufficiency of which it heretofore passed on, that this defendant had large dealings of debits and credits with said bank, extending over a long period of time anterior to the giving of the checks in question. If the government, under the present indictment, can go into proof of the integrity of the one, why may it not as to any other of the series by way of showing, as the sum of the result, that the defendant was not in law and fact entitled to draw on the bank the several checks in question? If such a range of inquiry is to be indulged to the government under this indictment, it does seem to the court that no defendant's liberty would be safe against the probability of surprises being sprung on him at the trial. One of the cardinal reasons assigned by the text-writers and the courts for requiring such indictments to set out with reasonable certainty of specification the essential acts constitutive of the fraud is that in case of another prosecution the defendant may avail himself of the record by plea of autrefois acquit or convict. It therefore becomes all-important to a defendant that the whole of the particular transactions leading directly to the constitution of the offense should be embraced within the allegation of the indictment. There ought not to be any uncertainty about it. Nor ought the defendant to be driven in his plea of former jeopardy to proof in pais, with its attendant difficulties and disputes, when the government seeking his conviction, in the interest of humanity and justice, being in possession of the facts when the indictment was drawn, could so easily make the proof a matter of record evidence by the allegations of the indictment. In other words, it would have been the exact method, in order to get the alleged false entry of August 1, 1898, in evidence, for the indictment to have alleged, in effect, that the defendant, intending to defraud and injure the bank, and obtain its moneys without consideration, procured an entry to be made on the books of the bank of date August 1, 1898, by which it was made to appear by a deposit slip that he had on that day placed and deposited with the bank to his credit the sum of $6,000, when in truth and in fact he had placed no such sum with the bank; that the same was without consideration, fictitious, and fraudulent; and that in furtherance of his said scheme to defraud and injure the bank by obtaining its moneys he did afterwards issue the checks in question, whereby the moneys of the bank were withdrawn, and misapplied to the use of the defendant.

The court holds that the evidence in question, proposed to be offered on behalf of the government, is inadmissible under the indictment.