### SMITH v. CHASE & BAKER PIANO MFG. CO. et al.

(District Court, E. D. Michigan, S. D.   July 23, 1912.)

1. Courts (§ 322*)—Federal Courts—Bill by Stockholder—Collusive Suit—Pleading.

   A bill brought in the federal District Court by a minority stockholder to redress wrongs claimed to have been inflicted upon his corporation is demurrable if it fails to state that the suit is not a collusive one to confer on a federal court jurisdiction of a cause of which it would not otherwise have cognizance, as applied by equity rule 94 (29 Sup. Ct. xxxvii).

   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876–881, 887; Dec. Dig. § 322.*

   Rights of minority stockholders as to management of corporate affairs, see note to American Locomotive Sander Co. v. Economy Locomotive Sander Co., 89 C. C. A. 482.]

2. Corporations (§ 320*)—Bill by Stockholder—Requisites.

   A bill by a minority stockholder to redress wrongs claimed to have been ·inflicted upon the corporation is demurrable if it fails to set forth with particularity his efforts to secure action by the managing directors or the stockholders, and the causes of his failure to obtain such action

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as required by equity rule 94 (29 Sup. Ct. xxxvii), and especially where the bill shows that suit was brought without any attempt to settle the differences, though complainant was requested to attend a directors' meeting.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. § 320.*]

**3.** CORPORATIONS (§ 320*)—STOCKHOLDERS' BILL—SUFFICIENCY.

A bill by a minority stockholder against those in control charging infliction of wrong upon the corporation is insufficient where it fails to allege tangible facts sustaining general averments of fraud or misconduct.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. § 320.*]

**4.** CORPORATIONS (§ 370*)—OFFICERS AND STOCKHOLDERS—MUTUAL DEALINGS.

Corporations controlled and managed by the same officers and stockholders can deal with each other, and courts will not interfere in their internal affairs, unless the action of the majority in control is dishonest or fraudulently oppressive; losses from ignorant or even foolish mismanagement not being subject to redress.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1511–1518; Dec. Dig. § 370.*]

**5.** INJUNCTION (§ 70*)—MANAGEMENT OF CORPORATE AFFAIRS—BILL BY MINORITY STOCKHOLDER.

Under some circumstances and conditions, equity will enjoin the majority directors and stockholders from making a particular contract or pursuing a particular course of conduct, but the case would have to be extreme to warrant an injunction restraining corporate action, unless assented to and sanctioned by all the stockholders.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 136, 137; Dec. Dig. § 70.*]

**6.** CORPORATIONS (§ 553*)—RECEIVERS—APPOINTMENT.

Courts on proper application will appoint receivers for insolvent corporations, whose assets have been diverted and dissipated, but will seldom, if ever, assume management and control of a solvent and going concern, where relief may be otherwise had.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. § 553.*]

**7.** CORPORATIONS (§ 182*)—MINORITY STOCKHOLDER—RIGHTS.

Where two corporations are controlled by the same officers and majority stockholders, a minority stockholder of one of them is not entitled to an equitable lien upon the property of the other on account of any wrong of the controlling officers in selling the product of the minority stockholders' company to the other at a loss.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 686–690; Dec. Dig. § 182.*]

In Equity. Bill by John L. Smith against the Chase & Baker Piano Manufacturing Company and others. On demurrer to an amended bill. Demurrer sustained.

Fred A. Baker, of Detroit, Mich., for complainant.
F. H. and G. L. Canfield, of Detroit, Mich., for defendants.

SESSIONS, District Judge. This case has been heard once before on demurrer which was sustained. Thereupon complainant filed the present amended bill, in which is incorporated verbatim the whole of the original bill with some additions. The prayer for relief is un-

changed. Briefly stated, the allegations of the original and amended bills are as follows: .

Complainant is a citizen and resident of the state of Michigan. The defendants are citizens and residents of the state of New York. The Chase & Baker Piano Manufacturing Company was organized as a corporation on the 8th day of February, 1910, and acquired and owns a factory located in the village of Holly, in this state, where it manufactured pianos during the years 1910 and 1911. Its capital stock consists of 2,500 shares of the par value of $100 of which the Chase & Baker Company owns and holds 2,200, the complainant 250, the defendant Jacob Heyl 47, and the defendants Erik Heyl, Paul Henrich, and William F. Bayer one each. The Chase & Baker Company is a corporation whose capital stock is largely owned by the individual defendants; complainant having no interest therein. Complainant and the defendants Jacob Heyl and William F. Bayer are the directors of the Chase & Baker Piano Manufacturing Company. Complainant is its vice president and factory manager, and purchases all materials and supplies, hires the employés at the factory, pays the bills out of moneys sent to him from New York, and receives a salary of $5,000 per year. During the years 1910 and 1911 the individual defendants, having control of both corporations, sold and turned over to the Chase & Baker Company all of the pianos made by the Chase & Baker Piano Manufacturing Company at prices fixed by themselves which were less than the cost of manufacture, thereby causing considerable loss to the manufacturing company, nearly if not quite all of which was attributable to the fact that the purchasing company did not take a sufficient number of pianos to keep the manufacturing company running to its full capacity. In July, 1911, the board of directors of the Chase & Baker Company, acting for that company, submitted to complainant, as manager of the Chase & Baker Piano Manufacturing Company, a schedule of prices which the former company proposed to pay for pianos manufactured by the latter company during that year. Complainant refused to consent to such prices, and objected to the continuance of the contract then existing between the two companies. Thereupon the defendant Jacob Heyl, as president of the Chase & Baker Piano Manufacturing Company, notified the complainant by letter that, in view of his "objection to the proposals of the Chase & Baker Company and the schedules of prices submitted by them * *. * which in all probability will involve a complete rearrangement of the trade relations existing between the two companies," it would be necessary to have a meeting of the board of directors of the manufacturing company to vote upon those matters and that such meeting had been called for Monday, July 31st. Complainant did not attend the meeting of the directors, and does not know what action was taken.

The amended bill further alleges that the action of the individual defendants as directors and officers of the Chase & Baker Piano Manufacturing Company in selling to the Chase & Baker Company all of its product "was in pursuance of a contract craftily, corruptly, and fraudulently entered into between the two corporations, by which

the Chase & Baker Company not only purchased at its own prices all the pianos manufactured by the Chase & Baker Piano Manufacturing Company, but also controlled the number of pianos to be manufactured and the number to be so sold; that the Chase & Baker Company was in bad faith and covin permitted to control both the output and the prices; that, if 2,200 pianos had been made and sold in each year, there would have been no actual loss even at the low prices so fixed"; that this suit is properly brought by complainant to protect his own interests, and is not a proper one to be brought by the Chase & Baker Piano Manufacturing Company because the individual defendants who control both corporations have a larger interest in the Chase & Baker Company than in the other, and are the persons who have been guilty of the fraudulent misconduct and mismanagement of which complaint is made and have assumed an attitude hostile to the complainant, and also assert and claim that the manufacturing company is subsidiary and subject to the control and directions of the Chase & Baker Company, regardless of the rights of complainant as a minority stockholder; that the pianos manufactured under the management of complainant were of a good quality, and as perfect as could be made for the prices received; that the failure of the Chase & Baker Company to order and take the capacity output of the Holly factory was owing to the inexperience, incompetency, and mismanagement of the individual defendants and the sales agents, and not to the poor quality of the pianos as claimed by defendants; that the complainant did not consent to the contract between the two corporations as claimed by defendants; and that complainant has not received a financial statement of the affairs of the Chase & Baker Piano Manufacturing Company for the year 1911.

The prayer of the original and amended bills is: (1) "That the action of the board of directors of the Chase & Baker Piano Manufacturing Company in turning over to the Chase & Baker Company all of the pianos manufactured at the factory and plant in Holly at prices less than the cost of production and a fair profit may be declared illegal and a violation of the rights of the Chase & Baker Piano Manufacturing Company and of your orator as a minority stockholder therein"; (2) that the defendants may be temporarily and perpetually enjoined from selling pianos to the Chase & Baker Company, unless the selling price and the contract to manufacture and sell is unanimously approved by all the stockholders of the manufacturing company; (3) that an accounting may be had concerning the pianos sold during the years 1910 and 1911; (4) that the amount found due to complainant on such an accounting may be declared an equitable lien on the real and personal property in Michigan of the manufacturing company to be enforced by the appointment of a receiver and such other proceedings as may be necessary; (5) that complainant's investment in the capital stock of the manufacturing company may also be declared an equitable lien upon the property of that company and enforced in the same manner; and (6) for general relief.

Defendants have demurred to the amended bill on several grounds, only two of which require special consideration.

[1] 1. Complainant has not complied with the requirements of equity rule 94 (29 Sup. Ct. xxxvii). Notwithstanding his averment to the contrary, it is manifest that this bill is founded solely "on rights which may properly be asserted by the corporation." The wrongs, if any, for which redress is sought, have been inflicted upon the Chase & Baker Piano Manufacturing Company directly and upon the complainant only indirectly and by reason of his•interest in that company as a minority stockholder. The injury, if any, to the corporation necessarily includes the injury to the stockholders. Under equity rule 94 a bill such as the present one must contain an allegation "that the suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance." This bill contains no such allegation, and this requirement of the rule is positive, mandatory, and jurisdictional. This court would have no jurisdiction of a suit brought by the corporation against the other defendants because the requisite diversity of citizenship is lacking, and also because all the defendants are citizens and residents of another state. In this respect the bill is fatally defective. Quincy v. Steel, 120 U. S. 241–246, 7 Sup. Ct. 520, 30 L. Ed. 624; Dickinson v. Traction Co. (C. C.) 114 Fed. 232; Rogers v. Railway Co., 91 Fed. 299–306, 33 C. C. A. 517.

[2] Complainant has also failed sufficiently to comply with the other branch of rule 94, which provides that the bill "must also set forth with particularity the efforts of the plaintiff. to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action." This bill alleges that, as soon as complainant objected to the action of which he now complains, he was requested to attend a directors' meeting called for the very purpose of remedying the condition complained of and removing the cause of complaint. The letter containing this request informed him that in all probability his objection would "involve a complete rearrangement of the trade relations existing at present between the two companies," and, further, that, "in order to have the entire matter thoroughly ventilated and the subject discussed in all its bearings, it is deemed advisable to have a full board present at this meeting to take action commensurate to the requirements and importance of the matter under consideration." It would seem that complainant desired litigation more than an adjustment of existing troubles, because, instead of complying with the reasonable request so made, he failed to attend the directors' meeting, and, without making any attempt to settle the differences, commenced this suit. Such conduct does not comply with either the letter or the spirit of the rule. Detroit v. Dean, 106 U. S. 537, 541, 542, 1 Sup. Ct. 500, 27 L. Ed. 300; Quincy v. Steel, 120 U. S. 241, 247, 248, 7 Sup. Ct. 520, 30 L. Ed. 624; Corbus v. Gold Mining Co., 187 U. S. 455, 465, 23 Sup. Ct. 157, 47 L. Ed. 256; Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Dimpfell v. O. & M. R. Co., 110 U. S. 209, 3 Sup. Ct. 573, 28 L. Ed. 121.

[3, 4] 2. The vital and essential element of complainant's right and cause of action consists in fraudulent and oppressive misconduct of

the defendants in making a contract by and under which the product of the manufacturing company was turned over to the Chase & Baker Company at a loss to the manufacturing company and its stockholders, including complainant. Beyond the bare facts that the individual defendants were in control of both corporations, and made such a contract which resulted in loss to the manufacturing company and indirectly to complainant, the bill sets forth no specific acts of misconduct on the part of the defendants. It is true that the bill charges in most general terms that the action of the defendants "was in pursuance of a contract craftily, corruptly and fraudulently entered into between the two corporations," and that they "falsely and fraudulently" pretended that the reason why the Chase & Baker Company did not purchase the capacity output of the manufacturing company was because the product was imperfect and defective, and that the failure to make sales and thus to keep the factory running to its full capacity was owing to the inexperience, incompetency, and mismanagement of the defendants and their agents and servants, but it does not point out any specific acts or facts which constitute such corrupt and fraudulent misconduct. It nowhere appears that the Chase & Baker Company made an unusual or abnormal profit, or that the maximum output of the factory could have been sold elsewhere with or without a profit, or that the products would have brought more if they had been sold in the general market. Corporations controlled and managed by the same officers and stockholders have a right to deal with each other and courts will not interfere in their internal affairs unless the actions of the majority in control are dishonest or fraudulently oppressive to the minority. Losses resulting from ignorant or even foolish mismanagement cannot be recovered. A bill founded upon fraud or misconduct which does not allege with certainty and definiteness tangible facts to sustain its general averments of such fraud and misconduct is insufficient, and cannot be sustained. Van Weel v. Winston, 115 U. S. 228, 237, 238, 6 Sup. Ct. 22, 29 L. Ed. 384; Ambler v. Choteau, 107 U. S. 586, 591, 1 Sup. Ct. 556, 27 L. Ed. 322; Marquez v. Frisbie, 101 U. S. 473, 478, 25 L. Ed. 800; Von Horst v. Am. Hop & Barley Co. (C. C.) 177 Fed. 976; United States v. Martindale (D. C.) 146 Fed. 289–293; Hasard v. Griswold (C. C.) 21 Fed. 178.

[5] 3. In view of a possible further amendment of the bill, it may be well to note other defects and imperfections without discussing them.

(a) Under some circumstances and conditions, a court of equity will enjoin the majority directors and stockholders of a corporation from making and entering into a particular contract or pursuing a particular course of conduct, but the case would have to be extreme to warrant the issuance of an injunction restraining corporate action, unless assented to and sanctioned by all the stockholders. Such restraint would necessarily result in transferring the management of corporate affairs from the majority to the minority and would place the corporation and all persons interested therein at the mercy of the smallest minority stockholder.

(b) The power of this court to dissolve and wind up the affairs of a foreign corporation through a receivership may well be doubted.

[6] (c) While it is averred that the Chase & Baker Piano Manufacturing Company has suffered loss, no claim is made that it is insolvent. Courts upon proper application will appoint receivers for insolvent corporations whose assets have been diverted and dissipated, but will seldom, if ever, assume the management and control of a solvent and going concern where relief may be had by pursuing some other course.

[7] (d) The alleged wrongs and injuries of which complaint is made have been caused by the individual defendants and the Chase & Baker Company rather than by the Chase & Baker Piano Manufacturing Company, and complainant has no such right of action or claim against the latter company as to entitle him to an equitable lien upon its property.

An order will be entered sustaining the demurrer, with leave to complainant to amend his bill, if he so elects, within 20 days.