*Stem & Peck*, *Beattie & Winchester*, and *George Harding*, for complainants.

*Samuel S. Boyd*, for defendant.

---

## BROOKS & HARDY *v.* O'HARA BROS.

*(Circuit Court of the United States, District of Iowa - March 1881.)*

1. DECREE—WHEN SET ASIDE FOR FRAUD—WHAT A SUFFICIENT ALLEGATION OF FRAUD. It is not enough to allege generally, that the balance sued for was fraudulent, and no such balance was due.

2. SAME—ALTERNATIVE ALLEGATIONS. Nor is it sufficient to allege that the supposed balance for which decree was rendered, was made to appear either by a mistake of all the parties, or by false statements of the amounts, and deception practiced, or by collusion. The allegation that said claim was either a mistake, or false and fraudulent, and based upon no consideration, etc., not good.

3. SAME. The facts constituting the fraud must be stated so that the court, and not the pleader, may determine whether, if true, they constitute fraud. It is also necessary to charge an intent to deceive, and all allegations must be direct and not in the alternative.

4. SAME—CHARGING UPON INFORMATION AND BELIEF—INJUNCTION. An injunction will not be granted in the first instance upon a bill which charges fraud only upon information and belief.

5. FORMER DECREE—HOW ATTACKED RES ADJUDICATA. A former decree between the same parties and upon the same subject matter is final as to all questions which were, or might have been investigated in that suit, unless it appears that by some wrong act of the successful party, his adversary has been deprived of his right to fully present his case.

Bill in equity, brought to set aside a decree in favor of respondents, establishing a mechanic's lien upon the Burlington and Southwestern Railway, for $39,763.26, heretofore rendered in this court. The material allegations of the bill are the following:

"Your orators represent and show to the court that heretofore, to wit, about 1870, the Burlington and Southwestern Railway Company, a corporation in Iowa, constructing, owning and operating a railroad in Iowa and Missouri, by a certain deed of trust, duly and legally executed, conveyed its railroad property and franchises to your orators and one James F. Joy, who subsequently assigned his interest in said trust to your orators, said railway company being then and now a citizen of the state of Iowa, and your orators citizens of the state of Massachusetts, and said Jas. F. Joy a citizen of the state of Michigan.

"That said deed of trust was made to secure certain bonds, to be issued by said railway company to aid in constructing said railway, to the amount of $20,000 per mile of road; which bonds were actually issued and sold; and said railway having made default in payment of interest on said bonds, your orators filed their bill to foreclose said mortgage in this court, and such proceedings were had, that on the 8th day of June, 1871, a decree of foreclosure was entered, whereby it was found and decreed by the court that said company was indebted to your orators in the sum of —— million dollars, and said property ordered to be sold.

"Your orators further state and charge, that said respondents, prior to 1874, were engaged in constructing a certain portion of said road, having a contract to do the grading under J. W. Barnes, who was the original contractor, and which grading was to be done at certain prices set out and stipulated between him and said Burlington and Southwestern Railway Company.

"That said respondents, prior to January 1, 1874, made out and rendered to said railway company statements of the amount of work done by them and claimed to be paid therefor, and certain estimates were made by the engineer of said railway company for the sums so claimed, under the belief and supposition that said statements made by them were true and correct.

"That, prior to the 1st of January, as aforesaid, said railway company had paid to said respondents large sums of money on account of said work, and they held a large amount of said estimates, so called, for work done, as claimed by them, which were not paid.

"That, in December, 1873, said respondents brought suit in the circuit court of Appanoose county, Iowa, upon these estimates,

claiming that there was yet the amount thereof due to them for grading done on said railroad, and such proceedings were had in the premises, that a judgment and decree was rendered in their favor against said railway company on the 9th day of January, 1874, for the sum of $39,763.24, besides costs; but your orators were not parties thereto; but your orators charge that said estimates were issued and said judgments obtained upon the belief that said respondents had done the work claimed by them, and that, in rendering their accounts, they had acted in good faith, and that their representations of the amount of work done was true and correct.

"That it was subsequent to the obtaining of this judgment that your orators commenced proceedings in this court to foreclose said mortgages, and, in that proceeding, said respondents were made parties to the bill, and appeared and filed their cross-bill, setting up said judgment and decree rendered in the circuit court of Appanoose county. Your orators beg to refer to said proceeding in said cause in this court as part of this bill, and without setting the same out in *haec verba*, to show what was done therein.

"That, during the pendency of said suit, and before decree therein, the parties, by counsel, entered into an agreed statement of the facts, whereby it was admitted that said respondents' claim was correct, as shown by the judgment in Appanoose county, but such agreement was made under the belief and upon the representations that said judgment in Appanoose county was properly obtained upon a true state of the facts, and without any knowledge that said claim was not correct, or that the work upon which it was based had not been done.

"Such other proceedings were had in said cause in this court, that on the 8th day of June, 1877, a decree was entered awarding to said respondents the amount of said judgment, in Appanoose county, Iowa, and ordering that the same be a lien on the property of said railway company, paramount and superior to to that of the mortgage to your orators hereinbefore mentioned.

"That your orators and their counsel were wholly ignorant of what state of facts was proved in Appanoose county, or upon what representations or claim said decree was rendered, or whether the claim upon which it was based was correct or not, and your orators had no reason to know, and had no real knowl-

edge of the uncorrectness of the same until within a few weeks last past.    But so it is, and your orators now charge upon information and belief that the claim made by the respondents in said Appanoose county, and upon which said judgment and decree was rendered, was wholly fraudulent and fictitious; that the Burlington & Southwestern Railway Company, prior to the commencement of said suit in Appanoose county by respondents, had paid to them for grading and work done in the construction of its road, the sum of *two hundred and thirty-two thousand ($232,-000) dollars*, and the amount sued for by them was for a claimed balance unpaid, which your orators charge was fraudulent, and that no such balance was due, and that the money paid by said railway company as aforesaid more than paid said respondents for all the work they had ever done upon said railway; that said supposed balance was made to appear either by mistake of all the parties, or by false statements of the amount, and deception practiced upon the Burlington & Southwestern Railway Company, or its engineer, or by collusion with the officers of that company, to defeat and injure the claims represented by your orators, and to defraud the holders of the bonds secured by the mortgage to your orators.    That said claim was either a mistake, or was false or fraudulent, and based upon no consideration, and upon a claim for work which was never done and ought never to have been allowed, all of which was unknown to your orators, and with reasonable diligence could not be learned during the pendency of the suit in this court, the only one to which your orators were parties."

. The prayer is for an injunction to restrain the execution of the decree, and that the same be set aside.

Respondents demur to the bill.

The demurrer is general, and the points raised under it are stated in the opinion.

McCRARY, Circuit Judge.

*First*—The bill does not allege with sufficient particularity that the decree, which is sought to be set aside, was obtained by fraud.

It alleges in general terms that there was nothing due the respondents on their claim, and it is averred that "the amount sued for by them was for a claimed balance unpaid, which your

orators charge, was fraudulent, and that no such balance was due, and that the money paid by said railway company as aforesaid more than paid said respondents for all the work they had ever done for said railway."

It is further alleged, that "said supposed balance was made to appear, either by a mistake of all the parties, or by false statements of the amounts, and deception practiced upon the Burlington and Southwestern Railway Company, or its engineer, or by collusion with officers of that company, to defeat and injure the claims represented by your orators, and to defraud the holders of bonds secured by the mortgage of your orators.

"That said claim was either a mistake, or was false and fraudulent, and based upon no consideration, and upon a claim for work which was never done, and ought never to have been allowed, all of which was unknown to your orators, and with reasonable diligence could not be learned during the pendency of the suit in this court, the only one to which your orators were parties."

A bill for relief on the ground of fraud must be specific.

It is not enough to charge in general terms that a particular transaction was fraudulent.

The facts constituting the fraud must be stated, so that the court, and not the pleader, may determine whether, if true, they constitute fraud.

This rule applies to all bills for relief on the ground of fraud, including, of course, a bill to set aside a judgment or decree upon that ground. Story Eq. Pleading, 251, 428; Kerr on Fraud and Mistakes, 365.

It is also necessary to charge the intent to deceive, either by an express averment or by such words as necessarily imply such intent. *Moss* v. *Riddle*, 5 Cr., 351; *Gray* v. *Earl*, 13 Iowa, 188.

The counsel who drafted this bill evidently intended to comply with these rules by inserting the allegations embraced in the second quotation above, wherein it is set forth in effect that the balance due complainant was made to appear either by mistake of all the parties, or by deception practiced upon this railway company, or by collusion with that company.

By this allegation the complainants say, in substance, that the wrong was done them in one of these three ways, but as to which one, they are unable to say.

The insufficiency of such an allegation will be very apparent

when it is suggested that mistake is one thing, and fraud another, and that the character of the case and nature of the defense would depend very much upon the question whether it is a case of mistake or a case of fraud that is set out.

No man can be required to answer and prepare for trial upon a bill which leaves him in doubt as to the exact nature of the case against which he is to defend.

Hence, the rule that allegations must not be in the alternative. Story Eq. Plead., 245, 245*a*.

In view of these considerations, I am constrained to hold that the bill does not set forth the circumstances of the fraud charged with sufficient certainty and particularity.

*Second*—The fraud relied upon is charged only upon information and belief.

An injunction cannot be granted in the first instance upon an allegation of this character.

It is necessary that the fraud should be made to appear by positive averments, founded on complainant's own knowledge or that of some person cognizant of the facts. High on Inj., Sec. 35, and cases cited; *Id.*, Sec. 118, and cases cited.

*Third*—Another, and much more important question is presented by this record, and has been discussed by counsel.

This is a bill to set aside a former decree of this court between the same parties and upon the same subject matter.

It is clear that all questions touching the validity or amount of respondents' claim were open to investigation in the former suit.

Issue was joined upon their cross-bill, and testimony was taken and decree was rendered in their favor.

It was the right and duty of complainants to investigate the character of the claim, and to set up, in *that case*, whatever defense they had.

It is not enough to allege that they did not discover the facts in time so to do.

The only exception to this rule is in cases where, by some wrong act of the successful party, his adversary is deprived of the right to fully present his case. The rule is thus stated by Mr. Justice Miller in *United States* v. *Throckmorton*, 98 U. S., p. 65:

"But there is an admitted exception to this general rule in cases where, *by reason of something done by the successful party to*

*a suit*, there was, in fact, no adversary trial or decision of the issue in the case.

"Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponents, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently, or without authority, assumes to represent a party, and connived at his defeat; or where the attorney, regularly employed, corruptly sells out his client's interest to the other side. These and similar cases, which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained, to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.

"See Wells Res Adjudicata, Sec. 499; *Pearce* v. *Olney*, 20 Conn., 544; *Wierick* v. *De Toya*, 7 Ills., 385; *Kent* v. *Ricards*, 3 Md. Ch., 392; *Smith* v. *Lowry*, 1 Johns. (N. Y.), Ch., 320; *De Louis et al.* v. *Meek et al.*, 2 Iowa, 55."

The rule is clearly settled, at least so far as the federal courts are concerned, that a judgment will not be set aside upon an original bill, upon the ground that it was founded upon a fraudulent intentment or perjured evidence, when there were no hindrances besides the negligence of the defendant in presenting the defense in the first suit.

The case of *United States* v. *Throckmorton, supra*, is a striking illustration of this rule.

The judgment attacked in that case had been obtained, as was alleged, upon a grant which had been executed by the former Mexican governor of California, after he had ceased to hold that office, and falsely and fraudulently antedated.

The case was a strong one, but the court said: "There was ample time to make all necessary inquiries and produce the necessary proof, if it existed, of the fraud," in the progress of the original suit; and the bill was held bad on demurrer, because it was the duty of the complainants to ascertain the facts and make their defense in the original suit.

And the court quote with approval the following rule laid down by Shaw, C. J., in *Greene* v. *Greene*, 2 Gray, (Mass.), 361: "The maxim that fraud vitiates every proceeding must be taken, like

all other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, *or so in issue that it might have been tried*, it is not again admissible. The party is estopped to set up such fraud, because the judgment is the highest evidence and cannot be contradicted."

See also the following authorities, cited by Mr. Justice Miller in same opinion: *Dixon* v. *Graham*, 16 Iowa, 310; *Cottle* v. *Cole*, 20 *Id*, 482; *Borland* v. *Thorton*, 12 Cal., 440; *Biddle* v. *Baker*, 13 Iowa, 295; *Railroad Company* v. *Neal*, 1 Wood, 353.

The demurrer must be sustained, with leave to complainants to amend, if counsel thinks he can bring the case within the principles announced in this opinion.

*So ordered.*

*P. Henry Smyth*, for complainants.
*Hubbard & Clark*, for respondents.

---

# BOOK NOTICES.

A TREATISE ON THE LAW OF JUDGMENTS. Including all Final Determinations of the Rights of Parties in Actions, or Proceedings at Law or in Equity. By A. C. FREEMAN, Counsellor at Law. Third edition, revised and greatly enlarged. San Francisco: A. L. Bancroft & Co., 1881.

The former editions of this treatise are too familiar to the profession to render necessary any commendation of the work. Its value is universally recognized. In the present edition some twelve hundred cases have been added to the authorities cited, and the text has been increased about one-sixth. New topics not considered in the former editions have been treated. As, for example—what are final judgments in criminal prosecutions and intervention cases; the form of judgments, with regard to designating the parties and the relief granted; fraud and perjury as grounds for vacating judgments on motion; merger arising from prosecutions and convictions in criminal cases; set-off of one judgment against another; the conclusiveness of judgments when questioned on *habeas corpus*. Due prominence is given to the recent decisions of the Supreme Court of the United States, by which judgments, whether foreign or domestic, seem to remain ever open to attack on jurisdictional grounds. Every lawyer will appreciate the importance of these additions. The work, both in the matter of text and authorities, has been brought down to the present time.