BOARD OF TRADE OF CHICAGO v. HADDEN-KRULL CO. et al.

(Circuit Court, E. D. Wisconsin. February 18, 1901.)

EXCHANGES—PROPERTY RIGHT IN MARKET QUOTATIONS—WHAT CONSTITUTES PUBLICATION.

The furnishing by a board of trade of market quotations, made upon the transactions of its exchange, to customers for their exclusive use, either by means of a ticker, or by placing them on a blackboard in the customers' office, is not such a publication as deprives the board of its property right therein, and it is entitled to the protection of such right by an injunction prohibiting the use of such quotations without its authority, and before their publication, by a third party, to whom they are furnished by one who obtains them surreptitiously.

In Equity. On final hearing on bill, answers, and testimony, except as to the defendant Rogers Company, of which hearing was postponed on their special defense.

See (C. C.) 103 Fed. 902.

H. S. Robbins and Miller, Noyes & Miller, for complainant.

Quarles, Spence & Quarles, J. W. Bass, and Timlin & Glicksman, for defendants.

SEAMAN, District Judge. The testimony furnishes no support for the allegations in the bill that the defendants were engaged in the illegitimate business of bucket-shopping, or in gambling transactions, and equitable cognizance must rest exclusively (1) upon the undisputed proof that the market quotations were obtained from an

illegitimate source, namely, from Moody & Co., by whom they were surreptitiously taken and purloined from the private office of a customer of the board, who purchased the quotations for individual use only; and (2) upon proof of injury in fact to the property right of the complainant through such acquisition and use by the defendants. The existence of the property right is well established at common law (as stated in the opinion filed in this case on the motion for a preliminary injunction), and is upheld by the supreme court of Illinois in reference to these market quotations of the complainant (New York & Chicago Grain & Stock Exch. v. Board of Trade of City of Chicago, 127 Ill. 153, 19 N. E. 855), with the single qualification that a public interest attached when the quotations were given out, which entitled applicants to receive them "without unjust discrimination," and "for lawful purposes, and upon the same terms" which were given to others. This common-law right of property is preserved until voluntary publication; and, unless such publication intervened before use of the reports by the defendants, either through the transactions of the telegraph companies or of their subscribers, I am of opinion that the arrangement with the telegraph companies does not deprive the complainant of its interest to the extent of maintaining this bill. The difficulty I have found is to ascertain the time when the fact of publication occurs, —whether any of the acts shown amount to a publication before the markets are given out to the press. If the doctrine of Telegraph Co. v. Gregory [1896] 1 Q. B. 147, is adopted, the placing of the quotations upon the blackboard for the purposes and in the manner shown by the evidence would not constitute such publication as opens their use to the general public. In recent cases, however, it appears to have been held in reference to printed matter that the fact that a limitation was placed upon the nature of the use of copies delivered would not prevent the delivery from constituting a publication, if access by the public was open, and there was no restriction on the extent or number of persons having such access or use. Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547; Ladd v. Oxnard (C. C.) 75 Fed. 703, 731; Jewelers' Mercantile Agency v. Jewelers' Weekly Pub. Co., 155 N. Y. 241, 49 N. E. 872, 41 L. R. A. 846. These market quotations are peculiar in their property use and value, and, without immediate transmission to the customer, so that he receives them simultaneously with all other customers, and before their publication generally, they possess no purchase value. To make them available, it is essential to have the quotations written or printed in some form for the information of all entitled to their use; and it appears here that they were in some instances so furnished in the "ticker," and in others were placed on a blackboard in the office of the customer. No reason appears for finding a publication in the one method if not in the other, and I am of opinion that neither constitutes a dedication to the public while limited to the use and office of the customer. The testimony is undisputed that the quotations received by the defendants were wired to them by persons who obtained the reports by stealth and unfair means, without the consent or knowledge of the

owner; and the reports so derived are not open to the defendants' use or benefit, unless they were equally open to the general public at the same moment. No question is involved of discrimination in giving out the reports, or refusal to furnish to the defendants upon equal terms with other dealers, as it is not claimed that any request or offer was made to that end; and, so far as the testimony shows, I find no act or conduct in respect of the quotations prior to such receipt by the defendants to confer upon the general public a right of use. Therefore the complainant is entitled to a decree enjoining the defendants and their servants and agents from taking and using reports so derived without authority, but no ground appears for extending the injunction beyond the parties named.

The case of the defendant Rogers and his company is not involved in the foregoing view, and the hearing upon their plea was left open for argument, if desired. Unless some new consideration or authority is presented to remove present impressions, the pleas on that behalf must be sustained.

Let decree be prepared in accordance with this opinion.